**COMPANIA DE ELABORADOS DE CAFÉ, El Café, C.A., and Vicente Armijos, Plaintiffs,**

v.

**CARDINAL CAPITAL MANAGEMENT, INC., Defendant.**

**No. 02–21630–CIV.**

United States District Court, S.D. Florida, Miami Division.

Nov. 4, 2003.

Order Denying Reconsideration July 15, 2004.

Patrick Novak, Esq., of Horr, Novak & Skipp, P.A. and John R. Keough, III, Esq., of Sheinbaum & O'Regan, P.C., counsel for Plaintiffs, Compania de Elaborados de Café, El Café, C.A., and Vicente Armijos.

Barton S. Sacher, P.A., Roy M. Hartman, Esq., and Joseph A. Sacher, Esq., of Sacher, Zelman, Van Sant, Paul, Beiley, Hartman, Rolnick & Waldman, P.A., counsel for Defendant, Cardinal Capital Management, Inc.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALTONAGA, District Judge.

THIS CAUSE came before the Court on Defendant, Cardinal Capital Management, Inc.'s (hereinafter "Cardinal") Motion for Summary Judgment and Motion *In Limine* Respecting Summary Judgment (D.E. 71–1 & 71–2); and Defendant's Motion for Leave to Exceed Page Limits Respecting its Reply in Support of its Motion for Summary Judgment and Motion *in Limine* Respecting Summary Judgment (D.E. 94). The undersigned has carefully considered the Motions, memoranda of law and exhibits filed by the parties, and applicable law.

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court explained the movant's burden in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. 2548. The Eleventh Circuit has elaborated that the moving party's burden is to "demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever." *Brooks v. Blue Cross & Blue Shield,* 116 F.3d 1364, 1370 (11th Cir.1997). *See also Continental Cas. Co. v. Wendt,* 205 F.3d 1258, 1261 (11th Cir.2000) ("[t]he moving party bears the initial burden of establishing the nonexistence of a triable fact issue.") (citing *Celotex,* 477 U.S. 317, 106 S.Ct. 2548). Here, because Cardinal's Motion addresses the adequacy of Plaintiffs' causes of action, its burden is not to produce evidence negating the existence of material facts; rather the burden is to " 'point out the absence of evidence supporting the nonmoving party's case.' " *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.1992) (quoting *Latimer v. Smithkline & French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990)).

Under Rule 56(c), the non-movant must then "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' "

*Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Thus, "[i]f the non-movant ... fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted." *Brooks,* 116 F.3d at 1370. Furthermore,

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will *bear* the burden of proof at trial.... [T]here can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* (quoting *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548). The non-moving party, then, may not merely rest upon allegations contained in the pleadings. *Certain Underwriters at Lloyd's v. Capri of Palm Beach, Inc.,* 932 F.Supp. 1444, 1446 (S.D.Fla.1996).

In its Motion and supporting documents, Cardinal has pointed out the absence of evidence supporting Plaintiffs' claims. In response, Plaintiffs have failed to present any proof concerning the essential elements of their claims. Because the Motion is predicated on the absence of any facts developed in discovery to support Plaintiffs' claims, and Plaintiffs have presented no material disputed facts in opposition to the Motion, the undersigned is at a loss to articulate what the undisputed facts are that compel the entry of a summary judgment. Nonetheless, an attempt is made, based upon the pleadings, to summarize Plaintiffs' claims and to identify the absence of facts supporting those claims, such that summary judgment is appropriate.

The Corrected Amended Complaint[1] alleges that Plaintiffs, Compania de Elaborados de Café, El Café, C.A. (hereinafter "El Café"), and Vicente Armijos ("Armijos"), are Ecuadorian citizens. Defendant, Cardinal, is a Florida corporation that holds itself out as a registered investment advisor, money manager, investment banker and broker/dealer licensed under Florida law and the National Association of Securities Dealers and the Securities and Exchange Commission.

It is alleged that John D. Kaweske, as the Chief Executive Officer of R.K. Grace & Company of Coral Gables (hereinafter "RKG"), entered into a financial advisory agreement with U.S. Credit & Commerce, Inc. (hereinafter "USCC"), a corporation that Kaweske believed was wholly owned and controlled by its president, Naeem Shah. Under the agreement, RKG, through Kaweske, undertook to provide USCC with financial advisory services and to introduce clients to USCC in order to provide capital or fixed income securities to obtain secured loans. Also under the agreement, USCC would pay a finder's fee to RKG of all proceeds loaned by RKG clientele upon transfer of funds or securities. Kaweske approved an investment account for Shah and USCC at RKG in August of 1998. Kaweske further provided financial advice to Shah and became familiar with Shah's interest in a financing scheme involving the Grand Bay Club in Key Biscayne. It is alleged that Kaweske knew or should have known that Shah was using the funds of third parties and not his own in the investing, lending and financing transactions.

---

1. The substance of the "facts," with the exception to references to prior litigation not involving Cardinal, and Plaintiff, Vicente Armijos' Affidavit, are taken from the allegations raised by Plaintiffs in their pleading.

In January of 2001, Cardinal acquired RKG. Thereafter, in May of 2001, Kaweske opened another investment account at Cardinal for Shah in the name of USCC and Brickell Credit & Finance, Inc. (hereinafter "BCF"), a company Kaweske also allegedly knew or should have known was owned and controlled solely by Shah. Kaweske approved the opening of accounts and the use of Cardinal's services as an investment advisor for Shah, and obtained a power of attorney from Shah to buy and sell stocks and securities on Shah's behalf. At some point Cardinal also allegedly attempted to obtain or did obtain a power of attorney from Plaintiff, Armijos, to do the same.

It is alleged that Kaweske knew or should have known that Shah, USCC and BCF lacked authority and held no licenses to receive funds or maintain accounts for investment or financial management purposes, and that the funds to be deposited in the accounts of USCC and BCF would be held by Shah and his companies unlawfully. Kaweske also allegedly knew or should have known that the funds to be deposited in the Cardinal investment accounts for USCC and BCF were derived by Shah from unlawful activity or fraud.

Sometime in May of 2001, an El Café employee embezzled in excess of $600,000 from the company and transferred $500,000 from an El Café bank account to the accounts controlled by Cardinal on behalf of Shah. Before that time, Armijos had agreed with Shah to provide these El Café funds to invest at Cardinal. Armijos allegedly did not know the El Café funds had been wrongfully taken. The El Café funds were entrusted by Armijos to Cardinal, on behalf of El Café. It is alleged that Cardinal knew the funds it accepted came from the El Café bank account, and that these funds were then transferred to the Cardinal investment account for Shah, including the account in the name of USCC/BCF. Cardinal allegedly knew or should have known the funds were obtained by Shah through fraud or trickery.

In June of 2001, Cardinal made or directed transfers and payments from the accounts. Cardinal and Shah made and directed payments from the accounts to individuals with no apparent business or investment purposes. Cardinal invested approximately $250,000 in securities, made investment decisions from the funds, and took commissions on the transactions. Cardinal allegedly should have known the transfers and payments were unlawful and lacked any legitimate business or investment purpose and were being made for Shah's personal use. Throughout this time, Cardinal and Shah allegedly handled the funds as agents and trustees of El Café and Armijos.

Kaweske and other Cardinal employees allegedly met with Armijos and Shah on several occasions after receipt of the funds. Cardinal granted Shah access to its offices and wrote correspondence on Shah's behalf to Armijos. Cardinal also allegedly permitted Shah to misrepresent the position of Shah and Cardinal as to use of the funds, and thereby prevented Plaintiffs from conducting an investigation.

According to Armijos' statement in his affidavit, sometime in September of 2001 Cardinal gave Armijos a set of "New Account Documents." During an October 2001 meeting, the issuance and delivery to Armijos of two pay orders were allegedly authorized. Armijos was allegedly promised the sum of $550,000, including the amount of El Café funds. Cardinal allegedly knew of Shah's fraud and acted to conceal this knowledge despite a duty of disclosure to the Plaintiffs.

When it was confronted with the theft and transfer of the El Café funds, Cardinal refused to return the funds to El Café. When the original complaint was filed in

this case, El Café was a plaintiff conducting post-judgment discovery in aid of execution in a prior civil action it prosecuted against two Cardinal customers, USCC and BCF. In this prior litigation a judgment was entered against those defendants for the same $500,000 Plaintiffs seek here.

Count I of the Corrected Amended Complaint alleges conversion by Cardinal for wrongfully asserting control over El Café property inconsistent with the ownership interest therein by El Café, and wrongfully depriving El Café of its property. Count II alleges Cardinal breached a duty or committed a tort, because it owed a duty of care to customers, El Café and Armijos, for the purpose of investing, managing or transmitting Plaintiffs' money; and it should have known that the use of its accounts, securities, trading, and transfer facilities and securities licenses for Naeem Shah or his companies was for unlawful purposes. Count III alleges that Cardinal has been unjustly enriched because Plaintiffs conferred a $500,000 benefit on Cardinal, and the retention by Cardinal of the El Café money would be inequitable. Count IV alleges Cardinal made false statements, or acted in concert with Shah who made false statements to Armijos and El Café concerning the receipt, possession and disposal of the El Café money, and therefore Cardinal committed fraud.

In the Motion for Summary Judgment, Defendant correctly points out that there has been no evidence presented that: 1) Plaintiffs ever placed their property, cash, or securities into any account that Plaintiffs allege they opened or maintained at Cardinal; 2) Plaintiffs ever purchased, sold or took any action with respect to any security through the alleged accounts they maintained at Cardinal; 3) El Café ever spoke to or interacted with anyone at Cardinal at any time; 4) Armijos ever spoke to or interacted with anyone at Cardinal at any time before September 1, 2001; 5) USCC and BCF were not properly documented and disclosed customers of Cardinal; 6) any transaction in, or action taken by Cardinal with respect to the USCC and/or BCF customer accounts was not properly authorized or directed by Shah; 7) the loss by Plaintiffs due to the embezzling of between $500,000 and $600,000 occurred before the Plaintiffs had ever heard of Cardinal; 8) Cardinal failed to follow the instructions of its customers, USCC and BCF, through their principal Naeem Shah; 9) Cardinal was ever aware of the existence of the Plaintiffs before the USCC and BCF funds were expended down to a negative balance in September of 2001 by Shah; 10) Cardinal or its agents knew or had reason to know that the $500,000 had been obtained by Shah through fraud or from El Café; 11) Shah or any of his companies lacked the proper authority or licenses to use the monies transferred to his companies from the El Café bank account in New York; 12) Kaweske was told by Shah that the $500,000 was from any source other than as a business fee or commission earned by Shah; 13) Armijos had any ownership interest in the funds he now seeks from Cardinal or in the $500,000 deposited with Cardinal; 14) Armijos is an agent of El Café, and that he has an individual claim for monies taken from El Café; 15) and Armijos has been damaged.

Plaintiffs' Response in opposition to Defendant's Motion does contain the affidavit of Armijos, as well as excerpts of depositions of two Cardinal employees, Lisa Llanes and Howard Gostfrand. However, rather than identify disputed material facts, the Response merely raises the following **questions** to prevent the entry of summary judgment: 1) Whether Armijos and/or Cardinal [sic] was a customer or client of Cardinal or Cardinal owed a duty

to Armijos and/or El Café; 2) Whether El Café transferred $500,000 to a Cardinal account; 3) Did Cardinal know or should Cardinal have known Shah was using Cardinal and its offices, employees, accounts and stationery for illegal or improper purposes; 4) Did Cardinal know or should it have known Shah was depleting the account for his own personal use; 5) Did Lisa Llanes have authority to issue "irrevocable pay orders" to Armijos; and 6) Did the "irrevocable pay orders" issued by Cardinal serve any legitimate purpose?

At the time that Defendant filed its Motion for Summary Judgment and Motion *in Limine,* Plaintiffs had taken no depositions in this case. Plaintiff, El Café, had taken nine depositions in aid of execution of the judgment obtained in the prior civil action, that Defendant seeks to have excluded from use at trial. These include the depositions of Cardinal employees Llanes, Gostfrand, and Kaweske. For purposes of the summary judgment motion, consideration of Defendant's Motion *in Limine* is limited to whether the depositions of Llanes and Gostfrand should or should not be admitted to show disputed facts.

■ Defendant maintains that Plaintiffs should not be entitled to use these depositions because the statements were improperly taken. Although Defendant's employees were represented by counsel at the time the testimony was taken, Defendant did not have notice that the present suit had been filed. Thus, Defendant suggests it is prejudiced in that it did not have an opportunity to address issues that may have been relevant to this case, although it did have the opportunity to cross-examine Llanes and Gostfrand.

Such considerations do not compel exclusion of the depositions in summary judgment proceedings. It has previously been recognized that depositions need not be admissible at trial in order to be properly considered in opposition to a summary judgment motion. *See, e.g., Diamonds Plus, Inc. v. Kolber,* 960 F.2d 765 (8th Cir.1992). *See also Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (the nonmoving party need not produce evidence in a form that would be admissible at trial). Therefore, the excerpts of the Llanes and Gostfrand depositions attached to Plaintiffs' opposition papers are considered in the effort undertaken herein to locate any disputed material facts that would prevent the granting of summary judgment to Defendant.

■ As to Count I, Florida courts have identified three components to a claim for conversion: an "1) act of dominion wrongfully asserted; 2) over another's property; and 3) inconsistent with [plaintiff's] ownership therein." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1294 (S.D.Fla.2001). Defendant may also be found liable for conversion if it deprived Plaintiffs of their property, the $500,000, by means of an unauthorized act. *See Fogade v. ENB Revocable Trust,* 263 F.3d 1274, 1291 (11th Cir.2001).

In support of this claim, Plaintiffs maintain that their "allegations amply state 'unauthorized acts.'" (Pl. Mem. Opp. at 11). Again, Plaintiffs are required on a motion for summary judgment to go beyond the pleadings and rely on depositions, answers to interrogatories, or admissions on file to create an issue of fact. The depositions in question and Armijos' affidavit do not support this argument. Plaintiffs rest completely on the allegations in their complaint, combined with the questions previously summarized, as constituting "facts." They are not facts, and there is simply nothing in the record to show that the elements for a claim of conversion have been satisfied. Summary

judgment is therefore appropriate on Count I.

■ For Plaintiffs to prevail on Count II, they must ostensibly establish the existence of a duty of care owed by Defendant, which was breached when Defendant allegedly allowed Shah to use its accounts, securities, trading and transfer facilities and securities licenses for sham purposes. Plaintiffs maintain that the existence of Defendant's duty arises out of common law and several Florida statutory provisions.

■ "Under the common law, a person has no duty to control the conduct of another or to warn those placed in danger by such conduct unless a special relationship exists between the defendant and the persons whose behavior needs to be controlled or the foreseeable victim of such conduct." *Twiss v. Kury,* 25 F.3d 1551, 1555 (11th Cir.1994). Thus, at trial, Plaintiffs would be required to show that Defendant either had a special relationship with Shah, whose alleged behavior needed controlling, or with Plaintiffs, the alleged foreseeable victims of such conduct. Plaintiffs have not adduced evidence to show that Defendant knew that the funds deposited and withdrawn by Shah were improperly obtained from the Plaintiffs. Moreover, no evidence has been presented to support that Defendant had the right or the ability to control Shah's conduct. *See Palmer v. Shearson Lehman Hutton, Inc.,* 622 So.2d 1085, 1089 (Fla. 1st DCA 1993).

Assuming, *arguendo,* the existence of a special relationship between Defendant and Plaintiffs, Plaintiffs cannot establish that they were foreseeable victims without first showing that Defendant had knowledge of Shah's alleged wrongful conduct. While the Corrected Amended Complaint alleges that El Café and/or Armijos were clients of Cardinal, Armijos' affidavit, the only evidence of this "relationship," indicates that Armijos received a set of "New Account Documents" from Defendant in September 2001. Thus any special relationship, if formed, would have been created in **September 2001**, four months after Plaintiffs allege the funds in question were deposited into accounts allegedly maintained and controlled by Defendant. Plaintiffs have adduced no other evidence that establishes that Defendant had a special relationship with Plaintiffs, or that Plaintiffs were foreseeable victims when the alleged wrongful transfers occurred. Having failed to go beyond the pleadings, Plaintiffs do not create an issue of fact with respect to the existence of Defendant's common law duty.[2]

Plaintiffs further maintain that Sections 517.12, 560.111, 655.50, and 517.301, Florida Statutes, impose a duty on Defendant. As Defendant correctly notes, Section 517.12, Fla. Stat. requires those who deal in securities to register with the Florida Department of Banking and Finance. Plaintiffs have not shown that Defendant was not registered as required, or that any damages resulted from Defendant's failure to do so.

■ Section 560.111, Fla. Stat., codifies acts and practices prohibited under the Florida Money Transmitters' Code. Section 655.50, Fla. Stat., codifies those acts and practices prohibited under the Florida Control of Money Laundering in Financial Institutions Act. Neither of these sections creates a private cause of action. Even if Plaintiffs could rely on violations of these statutes to create a prima facie case of negligence, they must still establish all other elements of an action in tort. *Tierney v. Black Bros. Co.,* 852 F.Supp. 994,

---

**2.** While the violation of a statutory duty may satisfy the duty of care requirement in a negligence action, Plaintiffs have not adduced evidence that Defendant even violated a statutory duty. *See Palmer,* 622 So.2d at 1089 n. 8.

1000 (M.D.Fla.1994). Plaintiffs have failed to adduce any evidence that Defendant violated these statutory provisions.

■■■ Defendant concedes that a private cause of action is afforded to Plaintiffs if they can establish a violation of Section 517.301, Fla. Stat.. Section 517.211, Florida Statutes [3], delineates available remedies for the unlawful sale of securities in violation of Section 517.301. FLA. STAT. § 517.211(2); *Marcus v. Shapiro, Abramson & Schwimmer, P.A.,* 620 So.2d 1284, 1286 n. 2 (Fla. 4th DCA 1993). With respect to violations of Section 517.301, Section 517.211 states:

> (2) Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Plaintiff must prove the following elements to establish a violation of Section 517.301:

> (1) a misrepresentation or omission of a material fact; (2) justifiably relied on; (3) that the misrepresentation or omission was made in connection with a purchase or sale of securities; (4) with scienter or reckless disregard as to the truth of the communication; and (5) that the untruth was the direct proximate cause of the loss.

*Profilet v. Cambridge Fin. Corp.,* 231 B.R. 373, 380 (S.D.Fla.1999) (citing *First Union Brokerage v. Milos,* 717 F.Supp. 1519, 1523

(S.D.Fla.1989), *aff'd,* 997 F.2d 835 (11th Cir.1993)).

It is clear that Plaintiffs may only maintain a cause of action under Section 517.301 for damages arising from the purchase or sale of securities. Plaintiffs have not only failed to allege, but also have failed to present evidence, that they purchased securities from Cardinal. *See E.F. Hutton & Co., Inc. v. Rousseff,* 537 So.2d 978, 981 (Fla.1989) (stating that Section 517.211 protects *buyers* and *sellers* of securities). Therefore, as a matter of law Plaintiffs cannot maintain a claim for a violation of Section 517.301, Florida Statutes, and summary judgment on Count II is warranted.

■■■ To prevail on their claim for unjust enrichment in Count III, Florida law requires Plaintiffs to prove the following elements:

> (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof, (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F.3d 802, 805 (11th Cir.1999). In response to Defendant's arguments that no evidence exists to support the unjust enrichment claim, Plaintiffs have merely stated that "[a] factual question exists as to the satisfaction of these elements," (Pl. Mem. Opp. at 12) while, again, failing to refer to any evidence in the record that would create a factual question. Thus, summary judgment on Count III is appropriate.

---

**3.** Defendant contends that Plaintiffs' failure to allege reliance on Section 517.211 is fatal to their cause of action under Section 517.301. As the former is merely the procedural vehicle for obtaining a remedy under Section 517.301, Plaintiffs did not need to expressly allege reliance on Section 517.211.

Under Florida law, Plaintiffs must prove the following elements of fraud in order to prevail on Count IV: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Lopez–Infante v. Union Cent. Life Ins. Co.,* 809 So.2d 13 (Fla. 3d DCA 2002). Plaintiffs' fraud claims are based on alleged false statements made either by Cardinal directly, or by Cardinal acting in concert with Shah, who made false statements to Armijos. Plaintiffs also rely on their allegations that Cardinal issued "pay orders" and a "letter of authorization" to Armijos, to deceive or trick Armijos to forbear some kind of action with respect to funds wrongfully obtained by Shah or Cardinal.

Although Plaintiffs cite to authorities involving fraud claims, they fail to identify anything in the record to support the elements of their fraud claim. Plaintiffs casually reference correspondence to Armijos that they maintain misrepresents Cardinal's position "with regard to the receipt and utilization of El Café's funds." (Pl. Mem. Opp. at 13). Further, they state that Cardinal allegedly issued pay orders and a letter of authorization to pay Armijos the amount of $700,000. If these alleged. "statements" were indeed relied upon by Plaintiffs, no evidence has been presented that the statements were false. Moreover, Defendant's knowledge of such falsity has not been shown by Plaintiffs.

In their response, Plaintiffs also assert for the first time that their fraud claim is based on Defendant's material omission of fact regarding Shah's alleged fraud. Setting aside whether Plaintiffs may insert new legal theories by way of a response to a motion for summary judgment, they nonetheless fail to adduce any evidence to support an awareness by the Defendant of Shah's alleged wrongful conduct.

Plaintiffs have failed to produce evidence on matters that they have the burden of proof at trial, following ample opportunity to conduct discovery.[4] Not only did Plaintiffs fail to specifically designate the portions of the record that either supported their claims or created an issue of fact, the Court's own review of these documents failed to reveal factual disputes.[5] In a factually analogous case decided under Ohio state law, identifiable "red flags" showing that a bank customer was an inept business entity with questionable ethical standards that prompted the bank to demand payment of outstanding loans, were insufficient to show that the bank knew or had reason to believe it was

---

**4.** Plaintiffs' request for additional time to conduct expert discovery, should the Court grant Defendant's Motion *in Limine,* is not the equivalent of relief sought under Rule 56(f), Fed.R.Civ.P., and does not compel a postponement of the Motion for Summary Judgment, which Plaintiffs did not seek in any event.

**5.** It is the non-moving party's obligation to present evidence that precludes the entry of summary judgment. While Plaintiffs have identified six "statements of contested facts," and attached exhibits to their response, the Court is not required to "scour the record to determine whether there exists a genuine issue of material fact to preclude summary judgment." *L.S. Heath & Son, Inc. v. AT & T Info. Sys. Inc.,* 9 F.3d 561, 567 (7th Cir.1993); *see also Skotak,* 953 F.2d at 916 n. 7; *Lawrence v. Wal–Mart Stores, Inc.,* 236 F.Supp.2d 1314, 1322 (M.D.Fla.2002). Plaintiffs were required to "identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence supported their claim," *Forsyth v. Barr,* 19 F.3d at 1537 (quoting *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992)), and they markedly failed to do so.

receiving fraudulently obtained funds before it received wire transfers, and therefore summary judgment on state claims for conversion, unjust enrichment and receipt of stolen property was appropriate. *Regions Bank v. The Provident Bank, Inc.*, 345 F.3d 1267, 1279 (11th Cir.2003) (finding also that plaintiff failed to establish defendant acted in bad faith). Similarly, here, Plaintiffs, with an even sparser factual showing than that found insufficient in *Regions Bank,* fail to create an issue of genuine material fact, despite the repeated allegations that Cardinal "knew or should have known" of Shah's "fraud and trickery." Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (**D.E. 71–1**) is GRANTED. Defendant's Motion *in Limine* (**D.E. 71–2**) is DENIED in part. Defendant's Motion for Leave to Exceed Page Limits (**D.E. 94**) is GRANTED. All other pending motions are denied as moot.

### *ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION*

THIS CAUSE came before the Court on Plaintiffs, Compania de Elaborados de Café, El Café, C.A. ("El Café") and Vicente Armijos' ("Armijos") Motion to Reconsider (**D.E. 159–1**) Amend (**D.E. 159–2**) and/Or Correct (**D.E. 159–3**) the Court's Order Granting Defendant's Second [1] Motion for Summary Judgment. Oral Argument was held on April 8, 2004. The undersigned has carefully considered the Motion, memoranda of law and exhibits filed by the parties, counsels' arguments, and applicable law.

### I. *Background*

Count I of Plaintiffs' Corrected Amended Complaint alleged conversion by Defendant, Cardinal Capital Management Inc. ("Cardinal"), in wrongfully asserting control over El Café property—a $500,000 deposit—inconsistent with the ownership interest therein by El Café, and wrongfully depriving El Café of its property. Count II alleged that Cardinal breached a duty or committed a tort, because it owed a duty of care to its customers, El Café and Armijos, for the purpose of investing, managing or transmitting Plaintiffs' money; and it should have known that the use of its accounts, securities, trading, transfer facilities and securities licenses by a certain Naeem Shah ("Shah") or his companies was for unlawful purposes. Count III alleged that Cardinal has been unjustly enriched because Plaintiffs conferred a $500,000 benefit on Cardinal, and the retention by Cardinal of Plaintiffs' money would be inequitable. Count IV alleged Cardinal committed fraud by making false statements, or acting in concert with Shah, who made false statements to Armijos and El Café, concerning the receipt, possession and disposal of Plaintiffs' money.

On May 15, 2003, Defendant sought summary judgment arguing that there was no evidence to support any of the elements of Plaintiffs' claims. After reviewing Plaintiffs' submissions in opposition to Defendant's Motion for Summary Judgment, the undersigned agreed that Plaintiffs had failed to present evidence that would create a triable issue of fact. Thus, on November 4, 2003, summary judgment was entered in favor of Defendant on Plaintiffs' claims. In their Motion, Plaintiffs seek reconsideration of the November 4, 2003

---

**1.** Plaintiffs conceded at oral argument that their Motion improperly requested a reconsideration of an order granting Defendant's *Second* Motion for Summary Judgment, when, in

fact, the order being challenged granted Defendant's *First* Motion for Summary Judgment.

Order Granting Defendant's First Motion for Summary Judgment.

## II. Legal Standard

 "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Z.K. Marine, Inc. v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla.1992) (citing *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985)). Motions for reconsideration are appropriate where, for example, the Court has patently misunderstood a party, where there is an intervening change in controlling law or the facts of a case, or where there is manifest injustice. *See id.; Compagnoni v. United States,* No. 94–813–Civ, 1997 WL 416482, at *2 (S.D.Fla. May 13, 1997).

 In order to demonstrate clear error, the movant must do more than simply restate his or her previous arguments, and any arguments the movant failed to raise in the earlier motion will be deemed waived. *See McCoy v. Macon Water Authority,* 966 F.Supp. 1209, 1222 (S.D.Ga. 1997). Furthermore,

> A motion for reconsideration should not be used as a "vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." [I]t is an improper use of the motion to reconsider to ask the Court to rethink what the Court ... already thought through—rightly or wrongly.... The motion to reconsider would be appropriate where, for example, the Court has patently misunder-

stood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.... Such problems rarely arise and the motion to reconsider should be equally rare.

*Compagnoni,* 1997 WL 416482 at *2.

## III. Analysis

In their Motion, Plaintiffs primarily reiterate the arguments they made, or should have presented but did not, in their response to the First Motion for Summary Judgment. Plaintiffs have not presented an intervening change in the law or the facts of the case based on newly discovered evidence. Rather, Plaintiffs maintain that the Court misapprehended or overlooked evidence supporting Plaintiffs' causes of action, and incorrectly analyzed each cause of action when she failed to consider evidence submitted with the opposition to Defendant's Motion for Summary Judgment.[2] Specifically, Plaintiffs argue:

> Contrary to the Court's November 4 Order, plaintiffs presented uncontradicted evidence that El Café placed $500,000 of its funds by wire transfer into the account maintained and controlled by Cardinal. The record evidence submitted by plaintiffs demonstrates the error of the Court's reference, at pages 7–8 of the November 4 Order, to items numbered "1," "9" and "10" as supported by "no evidence." Item "1" stated there was no evidence that plaintiffs placed

---

2. Plaintiffs maintain the Court misapprehended the "Statement of Contested Facts" contained in the Response to the Motion for Summary Judgment. Although the statements of fact were not statements, but rather, questions, Plaintiffs insist that these questions nonetheless served to raise issues of material fact. In the November 4, 2003 Order, the Court noted that Plaintiffs had failed to specif-

ically designate portions of the record that supported their claims or raised issues. Indeed, Plaintiffs acknowledged at oral argument that they "could have spelled out everything that we have spelled out in [our] motion to reconsider," but failed to do so because they claim that whether or not $500,000 was deposited into an account with Cardinal was not at issue.

their funds into an account plaintiffs allege they maintained at Cardinal: [sic] Item "9" stated there was no evidence that Cardinal was ever aware of the Plaintiffs before the funds in question were totally spent by Shah; and Item "10" stated there was no evidence that "Cardinal or its agents knew or had reason to know that the $500,000 had been obtained by Shah through fraud or from El Café."

(Pls.' Mot. Recons. at 5–6).

The Court's first finding in her November 4, 2003 Order was that there was no evidence that Plaintiffs had placed their funds in an account maintained *by Plaintiffs at Cardinal*. Plaintiffs insist evidence was indeed presented in the form of a bank statement for Defendant's purported clearing agent, Lewco Securities Corp. ("Lewco"), which reflects a wire transfer in the amount of $500,000 from El Café. According to Plaintiffs, "[t]hese records, not challenged by Cardinal on its motion, demonstrate the placement of El Café's funds into the account controlled by Cardinal and its [clearing agent]." (Pls.' Mot. Recons. at 6).

With respect to the Court's ninth finding that Cardinal was not aware of Plaintiffs' existence, Plaintiffs maintain Lewco's bank statement shows otherwise. Plaintiffs also maintain the Lewco statement reflects the deposit was made for a 180–day investment. The reference on the bank statement to "INV.180.DS" purportedly indicates the wire transfer was for a 180–day investment, and not for Shah's personal use, contrary to the Court's eleventh finding. Plaintiffs further maintain this same reference in the Lewco statement indicates Cardinal was aware Plaintiffs were the source of the funds in Shah's account, contrary to the Court's twelfth finding.

Lastly, Plaintiffs claim the Court incorrectly made its fourteenth finding that there was no evidence that Armijos was an agent of El Café. Plaintiffs cite to Armijos' declaration, dated June 2, 2003, wherein Armijos states he requested the transfer of $500,000 in May 2001 from El Café's bank account to Lewco. Armijos further states he was directing the deposit of $500,000 for investment by Shah's companies as well as for El Café.

While the Motion for Reconsideration articulates these bases upon which Plaintiffs contend there exist issues of material fact, the evidence referenced was not overlooked or misapprehended by the Court in its consideration of Defendant's First Motion for Summary Judgment. In the interest of further clarifying why Plaintiffs failed to satisfy their burden as nonmovants in resisting the granting of summary judgment, the Court addresses each of Plaintiffs' assertions.[3]

### A. An Earlier Denial of Defendant's Motion for Partial Summary Judgment Did Not Preclude the Undersigned from Granting the Later–Filed "First" Motion for Summary Judgment

On November 12, 2002, Defendant filed a Motion to Dismiss Corrected Amended Complaint, or, Alternatively, Motion for Partial Summary Judgment, and Motion to Strike Plaintiffs' Claim for Attorneys' Fees and Supporting Memorandum of Law. That Motion was referred to a magistrate judge for a report and recommendation. The Motion sought, among other things, partial summary judgment as to a single issue: whether Plaintiffs were ever customers or clients of Cardinal. The magistrate judge determined there existed a

---

**3.** The Court limits her review to the evidence submitted by the parties on Defendant's First Motion for Summary Judgment. Defendant's citations to deposition testimony that was not in the record prior to the First Motion for Summary Judgment are not considered.

genuine issue of material fact and that summary judgment was premature. On May 13, 2003, the district court adopted the report and recommendation in its entirety.

In finding the existence of a genuine issue, the magistrate judge noted that Plaintiffs had submitted evidence of a Cardinal letter dated September 6, 2001, welcoming Armijos as a client, as well as two pay orders dated October 1, 2001, which were also directed to Armijos. Plaintiffs maintain the Court overlooked the earlier decision, which precludes a later entry of summary judgment based on "essentially the same record."

■■■ The undersigned did not overlook the effect of this earlier decision. The May 13, 2003 Order involved consideration of a requested dismissal of Plaintiffs' pleading as well as a motion for **partial** summary judgment, and did not eliminate or address Plaintiffs' burden at summary judgment to "go beyond the pleadings and by [their] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation omitted). "Certainly [Plaintiffs] are well aware that different standards govern each type of motion, and a denial of a motion to dismiss for failure to state a claim within the pleadings does not preclude a motion for summary judgment on the basis of the evidence, or lack thereof, gathered during discovery." *New Jersey Auto. Ins. Plan v. Sciarra,* 103 F.Supp.2d 388, 420 (D.N.J.1998).

Moreover, Plaintiffs fail to cite to any authority in support of their contention that the earlier decision precludes entry of summary judgment. The Eleventh Circuit has held that a judge may grant a motion for summary judgment that an earlier judge has denied. *See Robinson v. Parrish,*

720 F.2d 1548 (11th Cir.1983). In addressing a similar argument based on the "law of the case" doctrine, the Eleventh Circuit aptly stated:

> The "law of the case" doctrine is "the rule under which the trial court and appellate courts are bound by any findings of fact or conclusions of law made by the appellate courts in a prior appeal of the case at issue." The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already conclusively decided. The issue normally arises in the context of a district court ignoring or contravening the ruling of a higher court in an earlier proceeding of the same case.... To hold that a district court must rigidly adhere to its own rulings in an earlier stage of a case would actually thwart the purpose of the doctrine. New developments or further research often will convince a district court that it erred in an earlier ruling, or the court may simply change its mind. We believe it would be wasteful and unjust to require the court to adhere to its earlier ruling in such an instance.

*Robinson,* 720 F.2d at 1549–1550 (noting that had second judge been required to follow earlier ruling, which was incorrect, "the time and effort of a complete trial would have been wasted.") (citations omitted); *see also Whirlpool Corp. v. U.M.C.O. Int'l Corp.,* 748 F.Supp. 1557, 1561 (S.D.Fla.1990) (citing *Robinson* and finding that prior ruling did not bar reconsideration of motion for summary judgment); *Cale v. Johnson,* 861 F.2d 943, 948 (6th Cir.1988) (noting that Second Circuit made clear that in reconsidering prior ruling, the "district court does not have to rely on new evidence; if the demands of justice require, it may simply change its mind.").

While Plaintiffs correctly state that the same record was "essentially" before the

magistrate judge as was presented with the First Motion for Summary Judgment, the Lewco account statement was not a part of the earlier record. In their opposition to Cardinal's Motion for **Partial** Summary Judgment, Plaintiffs did not suggest that they had deposited their money with Cardinal for investment purposes. Rather, the argument presented was that **Armijos** was a customer or client of Cardinal. (Pls.' Resp. at 20 (D.E. 33)). Plaintiffs further argued that **Armijos** had a substantial interest in the outcome as an agent or equitable trustee responsible for El Café funds *as alleged* in the Corrected Amended Complaint. (*Id.*). Plaintiffs did not submit any evidence supporting the existence of an agency relationship between Armijos and El Café. Plaintiffs also failed to submit any evidence supporting their allegation that $500,000 was transferred to Shah's account for investment purposes on behalf of El Café.

The magistrate judge acknowledged that a customer relationship may sometimes be formed despite the absence of a signed contract, and concluded that summary judgment was *premature.* The magistrate judge did not opine on the elements of each cause of action and whether Plaintiffs could satisfy their burden of proof at trial.

Cardinal filed the instant, First Motion for Summary Judgment shortly after the expiration of the original discovery cutoff date. By this time, Plaintiffs had failed to conduct any depositions or serve requests for discovery. The Court eventually extended the deadline for completing discovery, although it was not Plaintiffs who sought an enlargement of the discovery period. As noted in the Court's November 4, 2003 Order, the Plaintiffs did not assert a need for further discovery to adequately oppose Defendant's First Motion for Summary Judgment. Therefore, Defendant's

Motion, based on Plaintiffs' failure to adduce any evidence in support of their claims, was properly before the Court despite the later enlargement of the discovery deadlines.

For these reasons, the May 13, 2003 Order adopting the report and recommendation did not preclude entry of summary judgment. Moreover, the challenged Order granting summary judgment was not based on whether or not Plaintiffs were ever customers or clients of Cardinal. Certainly an issue of fact exists as to whether Armijos was ever a customer or client. Nevertheless, "[a]n issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. 'It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.'" *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). Although Armijos' purported status as a customer, a finding that this Court has never made, may be material, as this may constitute a "special relationship" between one of the Plaintiffs and Cardinal, this issue is not *genuine* because, as discussed further below, there is no evidence that he was a customer at the time the funds in question were deposited. Plaintiffs have therefore not established the other necessary element of the breach of duty claim, that they were foreseeable victims, because they have not shown that Cardinal had knowledge of the wrongful conduct.

**B.** **The Lewco Bank Statement is not Evidence that Plaintiffs Placed Their Funds into a Cardinal Account**

While not specifically addressed in the parties' briefs, the record suggests BNY Clearing Services, L.L.C. ("BNY") served as Cardinal's clearing agent.[4] Plaintiffs

4. The parties have referred to Cardinal as the

"introducing broker." "An introducing bro-

nonetheless refer to an account statement for Lewco that reflects a wire transfer from El Café in the amount of $500,000. Although there is no record evidence of a relationship between Lewco and BNY, or Lewco and Cardinal, Plaintiffs seek an inference that Lewco is the undisputed agent for Cardinal. The Court's references to Lewco as Cardinal's clearing agent are for purposes of addressing Plaintiffs' arguments and do not constitute a finding that there is evidence of a relationship between Lewco and Cardinal.

Lewco's bank statement shows that funds were transferred from an El Café account to an account number associated with Cardinal. At oral argument, Plaintiffs insisted that the bank statement established Plaintiffs to be customers or clients of Cardinal. However, Plaintiffs fail to show how the mere placement of funds into a Lewco account creates a special relationship with Cardinal, whereby Cardinal assumed a common law duty to El Café. To the extent Plaintiffs reargue that a statutory duty exists, the Court remains unpersuaded, as Plaintiffs failed to adduce evidence showing that Cardinal violated section 517.301, Florida Statutes.[5] *But see Grippo v. Perazzo*, 357 F.3d 1218,

1224 (11th Cir.2004) (finding plaintiff adequately *pled* fraud "in connection with the purchase or sale of any security," because plaintiff pled that defendant accepted and deposited plaintiff's monies as payment for securities).

According to Plaintiffs, resolving all inferences in their favor requires the Court to assume that **Cardinal** knew the $500,000 were transferred by El Café, based on **Lewco's** knowledge of the origin of the funds. The line item in the Lewco Securities Corp. account statement provides, in pertinent part: "PAY BK: BANK OF NEW YORK ORDER CIA DE ELABORADOS DE CAFE (El Café) ROBLES 103 Y CHAMBERS GUAYAQUIL, ECUADOR DETAILS: INV.180 DS. BENEF: /ND6–600437 CREDIT & COMMERCE INSTRUCT DATE: 05/31/01 ADVICE TYPE: NONE." Plaintiffs also suggest an inference may be drawn from the reference to "INV.180 DS" associated with the $500,000 transfer, such that a special relationship between Cardinal and Plaintiffs was created when Plaintiffs deposited the $500,000 for investment purposes. In the absence of other documents or testimony clarifying this reference and the transfer of knowledge from Lewco to Cardinal, however, the undersigned contin-

---

ker is generally a small broker that provides stock brokerage services and handles the substantive management of a customer's accounts. It is customary in the case of smaller brokers for another entity called the 'clearing broker' to perform mechanical, record keeping functions relating to the clearance and settlement of various transactions in the customer accounts." *Hirshenson v. Spaccio*, 800 So.2d 670, 673 (Fla. 5th DCA 2001) (citations omitted).

**5.** As discussed in the November 4, 2003 Order, Plaintiffs argued that Sections 517.12, 560.111, 655.50 and 517.301, Florida Statutes, imposed a statutory duty upon Defendant with respect to Plaintiffs. In their Motion for Reconsideration, Plaintiffs only challenge the Court's analysis under section 517.301, Fla. Stat. A plaintiff is afforded a

private cause of action for violations of section 517.301, Fla. Stat. through the provisions of section 517.211, Fla. Stat. "Section 517.301 of the Florida Securities and Investor Protection Act makes it unlawful for any person 'in connection with the offer, sale, or purchase of any investment or security': 1. To employ any device, scheme, or artifice to defraud; 2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or 3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person." *Grippo v. Perazzo*, 357 F.3d 1218, 1222 (11th Cir.2004) (citing FLA. STAT. § 517.301(1)).

ues to find this reference insufficient to create a triable issue of fact.

### C. There is No Evidence of an Agency Relationship Between Lewco and Cardinal

▆ Plaintiffs maintain they argued in their response to the Motion for Summary Judgment that Lewco's knowledge of the alleged investment purpose is imputed to Cardinal because Lewco is Cardinal's agent. In other words, Plaintiffs argue Cardinal knew or should have known that the money came from Plaintiffs, and that it was deposited for investment purposes, because Lewco's bank statement includes the reference to "INV. 180 DS." Assuming the abbreviation alludes to a 180–day investment period, Plaintiffs nonetheless failed to provide any evidence in support of an agency relationship between Lewco and Cardinal. At oral argument, Plaintiffs suggested that an agency relationship is undisputed. Defendants disagreed, explaining that they did not address the existence of an agency relationship because it was a conclusory statement made by Plaintiffs and Plaintiffs did not argue this point in their Response to the Motion for Summary Judgment.

▆ Indeed, Plaintiffs' sole reference to a purported agency relationship is contained on the first page of their Response to Defendant's Motion for Summary Judgment. Plaintiffs stated: "On May 31, 2001, plaintiff El Café transferred $500,000 from its New York bank into a New York bank account of Lewco Securities/BNY, an agent for defendant Cardinal Capital." (Pls.' Resp. at 1 (D.E. 90)). Arguably, Lewco's purported role as "clearing agent" suggests the existence of an agency relationship. It is well established, however, that the mere use of the terms "principal" and "agent" do not create an agency relationship. See Font v. Stanley Steemer

Int'l, Inc., 849 So.2d 1214, 1216 (Fla. 5th DCA 2003).

▆ The essential elements of an actual agency relationship are: 1) acknowledgment by the principal that the agent will act for it; 2) the agent's acceptance of the undertaking; and 3) control by the principal over the actions of the agent. Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853 n. 10 (Fla.2003) (citing Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990)). Generally, whatever knowledge an agent acquires within the scope of its authority is imputed to the principal. Computel, Inc. v. Emery Air Freight Corp., 919 F.2d 678, 685 (11th Cir.1990); LanChile Airlines v. Connecticut Gen. Life Ins. Co. of North America, 759 F.Supp. 811, 814 (S.D.Fla.1991). Notice is imputed however, when the agent receives the notice in reference to matters over which the agent's authority extends. Computel, Inc., 919 F.2d at 685.

Assuming Lewco and BNY are related entities and served as clearing agents for Cardinal, Plaintiffs have not provided evidence of the terms of the agreement between BNY and Cardinal that correspond to the time period when the $500,000 transfer occurred. The only documents evidencing an agreement are attached to Armijos' "New Account" documents that were prepared in September 2001, months after the transfer had occurred. Nonetheless, the September documents provide some guidance as to whether Plaintiffs are entitled to an inference in their favor on the agency issue. These documents include forms entitled "Allocation of Responsibilities," which detail the respective duties of BNY and Cardinal as follows:

BNY Clearing Services LLC is pleased to inform you that your brokerage firm Cardinal Capital MGMT, ("Cardinal Capital MGMT" or "broker") has contracted with BNY Clearing Ser-

vices LLC to act as its clearing agent and to provide recordkeeping, carrying, clearing, and settlement services for its customer accounts. An agreement between BNY Clearing Services LLC and Cardinal Capital MGMT sets forth their respective duties and responsibilities. BNY Clearing Services LLC has established an account in your name pursuant to that agreement and for that purpose only.

**The purpose of this section is to advise you of the separate responsibilities of BNY Clearing Services LLC and Cardinal Capital MGMT. You should note that your relationship with your broker is not altered by the clearing services provided by BNY Clearing Services LLC. Your dealings should be with your broker.**

(emphasis added).

Furthermore, pursuant to the terms of the clearing agreement, Cardinal Capital MGMT is responsible for:

Opening, approving, and monitoring the activity in your account, which includes obtaining and verifying new account information, investment objectives and other data from you.

(Pls.' Response Mot. Summ. J. (D.E.90), Decl. of Vincent Armijos). The "Allocation of Responsibilities" also instructs that:

BNY Clearing Services LLC is NOT responsible for any investment made by you or your broker in your accounts or any instructions provided to BNY Clearing Services LLC, nor does BNY Clearing Services LLC supervise, control, manage, or provide compliance for your broker.

(*Id.*). These documents indicate that BNY and Cardinal act independently with respect to the handling of the customer accounts and do not suggest the existence of an agency relationship.

Other jurisdictions have found that the "standard relationship between introduc-ing brokers and clearing brokers does not support the agency theory." *Lenhart v. Westfield Fin. Corp.,* 909 F.Supp. 744, 749 (D.Haw.1995) (citing New York courts following *Ahn v. Rooney, Pace Inc.,* 624 F.Supp. 368 (S.D.N.Y.1985)). In *Ahn,* the court found that the clearing broker had "underscored its separateness from [the introducing broker] by expressly disavowing in its customer agreement any responsibility or liability for the acts of the introducing broker." *Ahn,* 624 F.Supp. at 371. Plaintiffs have failed to present any evidence that there is an "undisputed" agency relationship or that they are entitled to such an inference. An issue of fact to defeat summary judgment must be based on evidence and not on Plaintiffs' argument alone. Having failed to adduce evidence in support of an agency relationship, there is no basis for an inference that Cardinal was aware of El Café's intention to deposit the $500,000 for investment purposes based on an unexplained reference on a Lewco bank statement.

### D. Armijos' Statements Do Not Create a Fact Issue

To the extent Plaintiffs claim that an investment purpose for the money is supported by Armijos, this, too, does not appear in the record. Armijos' June 2, 2003 Declaration establishes that Armijos did not have personal knowledge of the reasons for the transfer or deposit of the $500,000. Indeed, he does not state why he directed Livington Andrade, financial manager of investments for El Café, to transfer the money. Armijos states the money was transferred to an account for Lewco Securities Corp. because it was a brokerage firm managing investments for U.S. Credit & Commerce and/or Brickell Credit and Finance and El Café.

Armijos' statements are also not probative because Plaintiffs submitted no evi-

dence to establish that Armijos was an agent of El Café. Plaintiffs offer no explanation as to how or why Armijos acted for the benefit of El Café. El Café could have easily submitted an affidavit from a corporate representative indicating that Armijos acted at the behest of El Café. Instead, the only motive behind Armijos' actions is suggested by the Corrected Amended Complaint, which alleges that Armijos made an agreement with Shah, not El Café, and that Armijos solicited the money from El Café because he had made an agreement with Shah to do so. The only matter that is established by the account statement and Armijos' affidavit is that the $500,000 originated from El Café and Armijos directed the transfer. Armijos' Declaration does not establish Cardinal's knowledge of the source, origin or purpose of the $500,000 at the time of transfer.

There is no other evidence to support an inference that El Café provided Armijos with the money for investment purposes. The money was transferred into an account belonging to Shah's company, not El Café or Armijos. Indeed, Armijos did not receive New Account documents from Defendant until September 2001, four months after the transfer occurred. The record evidence shows that at the time the money was transferred to Cardinal, via Lewco, only Shah had established an investment account with Cardinal. To the extent Plaintiffs now argue that the money was actively transferred at El Café's initiative for investment purposes, they failed to submit evidence that Cardinal knew the reason for El Café's voluntary transfer of this money. In other words, there is no evidence of Cardinal's knowledge that the money was to be invested for the benefit of El Café.

In their Motion, Plaintiffs have not cited any intervening change in law or newly discovered evidence. Instead, Plaintiffs raise arguments that merely disagree with the Court's assessment of the facts and evaluation of the lack of evidence to find that Plaintiffs failed to raise a genuine issue of material fact. In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion (D.E. 159–1, 159–2 & 159–3) is **DENIED**.