[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-11319

_____

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 22, 2004
THOMAS K. KAHN
CLERK**

D. C. Docket No. 00-08653 CV-DTKH

ALAN GRIPPO,

Plaintiff-Appellant,

versus

JOHN E. PERAZZO,
T.S.C. FINANCIAL CORP., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 22, 2004)**

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge, and HODGES*,
District Judge.

_____

*Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida,
sitting by designation.

DUBINA, Circuit Judge:

Alan Grippo appeals the district court's dismissal of his federal securities claims, state securities claims, and other related state law claims against John Perazzo, T.S.C. Financial Corp., P.F.C. Ltd., and P.F.C. Financial Corp (the "defendants"). The district court dismissed Grippo's complaint for failure to allege fraud in connection with the purchase or sale of a security, for failure to plead fraud with particularity under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b), and as barred by the statute of limitations. For the reasons that follow, we affirm in part, reverse in part, and remand.

## BACKGROUND

### A. Facts

Perazzo first approached Grippo in New York about investing money with the defendants in foreign currency exchange markets and debt securities. Grippo alleges that Perazzo represented that the defendants could guarantee profits in foreign currency trading because they were heavily involved, knowledgeable, and experienced in foreign currency trading and because they were privy to beneficial multi-governmental information. Grippo further alleges that, throughout 1994 and

2

early 1995, Perazzo repeatedly told him that an investment with the defendants would return a high profit with no financial risk.

Based on Perazzo's representations, Grippo began investing with the defendants in February 1995. Grippo invested approximately $1.4 million with the defendants from February 1995 through February 1999, making a large percentage of those investments in 1997 and 1998. According to Grippo, the funds that he invested were sent in the form of personal or bank checks and deposited in the three corporate defendants' accounts held at the Bank of New York. Perazzo purportedly told Grippo that the defendants could not provide specific information about the securities in which Grippo's money was invested at any particular time because of a need to shift the investments to attain the highest rate of return. Grippo alleges that Perazzo then traded the securities in his account without first obtaining his permission or providing him with confirmation of the purchase or sale of securities.

After moving to Florida in October 1995, Grippo states that he kept in daily contact with Perazzo, and that Perazzo advised Grippo to continue to invest with the defendants in various types of investments. In the fall of 1997, Perazzo allegedly told Grippo that he ought to invest with the defendants in a food-for-oil barter deal with Iraq involving T.S.C. Financial Corp., Kraft Foods, Inc., and the

3

Iraqi Embassy in Canada. Grippo claims, however, that Kraft Foods, Inc. and T.S.C. Financial Corp. never consummated any such agreement.

Grippo alleges that in August 1998, Perazzo told him that the defendants could make better returns by investing in stocks, particularly the stock of a medical supply company that supposedly had a new break-through product. Grippo claims that "[f]rom September 1998 until July 2000 . . ., PERAZZO falsely represented to GRIPPO that by making additional investments with DEFENDANTS in stocks, especially the medical supply company's stock, that GRIPPO's investments 'would grow to well in excess of $10 million.'" [2d Am. Compl. ¶ 27]. Grippo alleges that he made additional investments from late 1998 through early 1999, totaling $239,000.

Grippo further claims that he made numerous requests for an accounting of his investments in stock. Grippo received a statement of his investments in March 1998, which showed a total investment amount of $1,087,992, but failed to indicate any security in which the money was invested. In November 1998, Perazzo provided Grippo with a statement from a Salomon Smith Barney account purporting to hold $3,077,942.37 of Grippo's invested funds. Similarly, this statement failed to delineate any particular securities in which the money was invested, indicating only that the monies were invested in "stock."

4

Grippo states that from late 1999 to the filing of the initial complaint in July 2000, Perazzo continually advised him that the investments held with the defendants were worth in excess of $10 million. In the fall of 1999, Perazzo allegedly represented to Grippo that the defendants had invested in a Nigerian oil deal, and that he would repay Grippo's investments once the deal closed. Despite repeated requests, Grippo never received any other accounting of his investment funds. Furthermore, Grippo claims that from late 1999 to early 2000, he made demands for the return of his money, to which Perazzo responded that Grippo's investments were safe, and that payment would be forthcoming once the defendants could liquidate the securities and resolve certain foreign currency exchange issues. Grippo claims that he received only nominal sums between 1995 and 2000, including a check dated July 19, 2000, for $10,000.

In December 1999, Grippo began investigating the safety of his investments. He ultimately concluded that the defendants did not intend to return his money.

B. Procedural History

On July 18, 2000, Grippo filed his initial complaint in the district court for the Southern District of Florida, alleging both federal and state securities claims and related state law causes of action. On December 22, 2000, the district court

dismissed the complaint with leave to amend, finding that Grippo failed to plead sufficient facts demonstrating that he timely filed his claims. On January 25, 2001, Grippo filed a first amended complaint, adding defendants T.S.C. Financial Corp., P.F.C. Ltd., and P.F.C. Financial Corp. On July 7, 2001, the district court dismissed the amended complaint, again granting leave to amend, after finding that the amended complaint failed to identify the specific dates of his investments, Perazzo's specific alleged misrepresentations, or why the statements were misleading.

On August 6, 2001, Grippo filed a second amended complaint against Perazzo, T.S.C. Financial Corp., P.F.C. Ltd., and P.F.C. Financial Corp.[1] The district court again dismissed the complaint, finding that Grippo failed to allege fraud in connection with the purchase or sale of a security because Grippo was unable to link his payment of monies to Perazzo with the purchase of an

---

[1] The second amended complaint set forth the following claims: (1) violation of Rule 10b-5, 17 C.F.R. § 240.10b-5, as promulgated under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j; (2) violation of Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l; (3) breach of contract; (4) common law fraud; (5) negligent misrepresentation; (6) conversion; (7) unjust enrichment; (8) violation of the securities registration provisions of the Florida Securities and Investor Protection Act, Fla. Stat. ch. 517.07; (9) violation of the broker registration provisions of the Florida Securities and Investor Protection Act, Fla. Stat. ch. 517.12; (10) fraudulent transactions in violation of the Florida Securities and Investor Protection Act, Fla. Stat. ch. 517.12; (11) conspiracy to defraud; and (12) accounting. While count 10 of Grippo's complaint refers to Florida Statute Chapter 517.12, based on the allegations in count 10, he is clearly alleging a violation of Florida Statute Chapter 517.301.

identifiable security, or prove that his funds were ever actually invested in anything. Alternatively, the district court dismissed with prejudice Grippo's federal securities claims as barred by the statute of limitations,[2] and dismissed Grippo's securities fraud claims for failure to plead fraud with specificity. The district court declined to retain jurisdiction over the remaining state law claims and dismissed those claims without prejudice. Grippo then perfected this appeal.

ISSUES

1. Whether the district court erred in dismissing the federal and state securities claims for failure to allege the purchase of a security.

2. Whether the district court erred in dismissing the federal securities claims as barred by the statute of limitations.

3. Whether the district court erred in dismissing the federal and state securities claims for failure to meet the heightened pleading requirements for fraud as required under Federal Rule of Civil Procedure 9(b) and the PSLRA.

STANDARD OF REVIEW

---

[2] Contrary to the parties' arguments, the district court did not dismiss Grippo's state securities claims as barred by the statute of limitations. A two year, rather than a one year, statute of limitations applies to Grippo's Florida securities claims. Fla. Stat. ch. 95.11(4)(e). We note that the district court could not have considered the relevant statute of limitations because Grippo allegedly made investments after July 1998.

7

We review the district court's judgment of dismissal *de novo* and will uphold a dismissal only if it appears beyond doubt that the allegations in the complaint, when viewed in the light most favorable to the plaintiff, do not state a claim upon which relief can be granted. *Theoharus v. Fong*, 256 F.3d 1219, 1224 (11th Cir. 2001).

DISCUSSION

A. Failure to Allege the Purchase of a Security

Section 517.301 of the Florida Securities and Investor Protection Act makes it unlawful for any person "in connection with the offer, sale, or purchase of any investment or security":

> 1. To employ any device, scheme, or artifice to defraud;
>
> 2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> 3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

Fla. Stat. ch. 571.301(1).

In discussing Grippo's federal securities claims, the district court found that Grippo could not plead securities claims because he failed to allege and could not

8

prove that any securities were actually purchased with the funds that he invested with Perazzo. Thus, the district court found that Grippo failed to establish that any alleged fraud was "in connection with the purchase or sale of any security."

The district court failed to discuss the elements of Grippo's state securities claims, merely stating that Grippo had to plead fraud in connection with the purchase or sale of a security. Assuming that such a requirement is an element of all of Grippo's state securities claims, we conclude that the district court erred in finding that Grippo failed to properly allege state securities claims on the ground that Grippo had not alleged that he actually purchased any securities.

The elements of a cause of action under § 517.301 are identical to those under the Federal Rule 10b-5, except that the scienter requirement under Florida law is satisfied by showing of mere negligence. *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1046 (11th Cir. 1987). Because Florida law does not answer the question that we examine today, we look to federal law for guidance.

Subsequent to the district court's order dismissing Grippo's second amended complaint, the Supreme Court made clear that a plaintiff does not need to identify a specific security, or demonstrate that his money was actually invested in securities, to be a purchaser of securities within the meaning of section 10b and Rule 10b-5. *SEC v. Zandford*, 535 U.S. 813, 819-21, 122 S. Ct. 1899, 1903-04,

153 L. Ed. 2d 1 (2002). In *Zandford*, a New York broker persuaded William Wood, an elderly man, to open a joint investments account for himself and his mentally retarded daughter. *Id.* at 815, 122 S. Ct. at 1901. Wood entrusted Zandford with over $400,000 to invest, with the objective for the account to be the safety of principal and income. *Id.* Zandford then sold securities in the Wood's account and made personal use of the proceeds. *Id.* After Zandford was convicted of thirteen counts of wire fraud, the SEC filed a civil complaint alleging that Zandford violated section 10(b) and Rule 10b-5 by engaging in a scheme to defraud the Woods and by misappropriating the Woods' securities without their knowledge or consent. *Id.* at 816, 122 S. Ct. at 1901. The district court entered summary judgment in favor of the SEC, and Zandford appealed, arguing that his fraud did not have the requisite "connection with" the purchase or sale of a security. *Id.* The Fourth Circuit reversed, concluding that the complaint did not sufficiently allege the necessary connection because Zandford's "scheme was simply to steal the Woods' assets" rather than to engage "in manipulation of a particular security." *Id.* at 816, 122 S. Ct. at 1901-02.

The Supreme Court reversed, construing the statute "not technically and restrictively, but flexibly to effectuate its remedial purpose," which is "to achieve a high standard of business ethics in the securities industry." *Id.* at 819, 122 S.

Ct. at 1903 (internal quotations omitted). The Court stated that the statute's language "in connection with the purchase or sale of any security" is ambiguous, and looked to the SEC's construction of the phrase, which maintains that "a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds, violates § 10(b) and Rule 10b-5." *Id.* The Court found reasonable and deferred to the SEC's broad construction and, accordingly, reversed the Fourth Circuit, concluding that the securities sales and Zandford's fraudulent schemes were not independent events and thus his breaches of fiduciary duty were "in connection with" securities sales within the meaning of section 10(b). *Id.* at 820, 122 S. Ct. at 1903.

Although *Zandford* is factually distinguishable from the instant case, the Supreme Court's deference to the SEC's reasonable construction of the phrase "in connection with" offers us guidance in determining whether Grippo may state a claim for securities fraud. In *Zandford*, only the portion of the SEC's interpretation dealing with "a broker who . . . sells customer securities with intent to misappropriate the proceeds" applied to the facts presented. In this case, however, no proof exists that a security was actually bought or sold. The defendants engaged in an allegedly fraudulent scheme involving an investment contract, which is a security, and at least purported to buy and sell other securities.

11

Thus, this case falls within the other portion of the SEC's interpretation: "a broker who accepts payment for securities that he never intends to deliver." Nonetheless, the Supreme Court clearly stated that the SEC's broad interpretation of the phrase "in connection with," *which includes the factual scenario presented in this case*, was reasonable and worthy of deference. *Id.* at 819, 122 S. Ct. 1903.

Accordingly, pursuant to *Zandford*, we conclude Grippo adequately pled fraud "in connection with the purchase or sale of any security," even though he failed to identify any particular security purchased, because Perazzo accepted and deposited Grippo's monies as payment for securities. Therefore, Grippo may maintain state securities claims against Perazzo, and the district court erred in finding that Grippo failed to state a claim under state law based on his inability to prove that his money was actually used to purchase any security.

B. Statute of Limitations

Actions under section 12 of the Securities Act of 1933 and section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of due diligence, . . . and in no event shall any such action be brought . . . more than three years after the sale." 15 U.S.C. § 77m; *Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilbertson*, 501

12

U.S. 350, 364, 111 S. Ct. 2773, 2782, 115 L. Ed. 2d 321 (1991) (adopting 15 U.S.C. § 77m as governing section 10(b) and Rule 10b-5 claims).

Grippo argues that he started investigating the safety of his investments in December 1999, after he determined that the defendants did not intend to return his monies as Perazzo had repeatedly promised, and filed his complaint in July 2000. However, "[d]iscovery occurs when a potential plaintiff has inquiry or actual notice of a violation." *Theoharous*, 256 F.3d at 1228. In *Theoharous*, this court defined inquiry notice in the context of section 10(b) and Rule 10b-5 claims as "the term used for knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed." *Id.* We further explained that "[i]nquiry notice is triggered by evidence of the *possibility* of fraud, not full exposition of the scam itself." *Id.*

Applying an objective reasonable person standard, we conclude that Grippo was put on inquiry notice over one year before he filed suit. Regardless of when Grippo actually discovered the alleged fraud, we are persuaded that a reasonable person would have begun investigating the possibility of fraud prior to July 1999. Therefore, the district court correctly found that the statute of limitations bars Grippo's federal securities claims.

C. Failure to Plead Fraud with Particularity

13

The district court also found that Grippo failed to plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b) and the PSLRA. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The PSLRA also establishes heightened pleading requirements for certain private securities actions, requiring the plaintiff to specify each statement alleged to have been misleading and the reasons why each statement was misleading. 15 U.S.C. § 78u-4(b)(1). For each alleged misrepresentation, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2).

The district court stated that it dismissed Grippo's securities fraud claims for failure to plead with particularity. However, whether the district court intended to dismiss both the federal and state securities claims on this basis is unclear. Because we conclude that the statute of limitations bars Grippo's federal securities claims, we need not address the issue of whether he pleaded these claims with the requisite particularity. Assuming that the district court dismissed both Grippo's federal and state securities claims for failure to meet the heightened pleading requirements, we note that the district court failed to address the pleading standards of Florida securities law, which are not identical to the federal pleading

14

standards. *See In re Sahlen & Assocs. Inc. Secs. Litig.*, 773 F. Supp. 342 (S.D. Fla. 1991) (explaining that Florida law imposes a less stringent pleading standard as to the scienter element than does federal law). Thus, we conclude that the district court erred in dismissing Grippo's state securities claims for failing to satisfy the heightened pleading requirements.

## CONCLUSION

In light of the Supreme Court's decision in *Zandford*, we conclude that the district court erred in finding that Grippo failed to state securities claims under Florida law because he did not allege specific securities in which Perazzo invested his monies. However, the district court correctly determined that the statute of limitations bars Grippo's federal securities claims. Accordingly, we affirm the dismissal of Grippo's federal securities claims. We conclude, however, that the district court erred in dismissing with prejudice Grippo's state law securities claims by failing to address the applicable pleading requirements. Therefore, we reverse the dismissal of Grippo's state securities claims and remand this case for further proceedings consistent with this opinion.[3]

---

[3] On remand, we note that although the district court may in its discretion address in the first instance the pleading requirements under Florida law, it may also decline to exercise supplemental jurisdiction over those claims, as it has disposed of all of the federal claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966).

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.[4]

---

[4] Appellees' pending motion for attorneys' fees is DENIED.