RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 22nd day of July, 2011.

**Dr. Art ARNOLD, et al., Plaintiffs,**

v.

**Thomas A. McFALL, et al., Defendants.**

**Case No. 11–80396–CIV.**

United States District Court,
S.D. Florida.

Dec. 14, 2011.

Todd Alan Zuckerbrod, Todd A. Zuckerbrod, P.A., Boca Raton, FL, for Plaintiffs.

Samuel Joseph Salario, Jr., Carlton Fields, Tampa, FL, Steven Jeffrey Brodie, Aaron Stenzler Weiss, Carlton & Fields PA, Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss (DE 13) ("Motion"), filed May 9, 2011. The Court has reviewed the instant Motion, Plaintiffs' Response (DE 19), Defendants' Reply (DE 23), and is otherwise fully advised in the premises.

Plaintiffs assert the following counts against seven individual Defendants: (1) securities fraud pursuant to section 517.301 of the Florida Statutes; (2) securities fraud pursuant to section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); (3) negligent misrepresentation; (4) breach of fiduciary duties of care, good faith, and loyalty; (5) fraud in the inducement; (6) breach of contract; and (7) rescission. (*See* DE 1—Attachment 1). Defendants move to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for fail-

ing to state a claim upon which relief can be granted and Rule 9(b) for failing to plead counts one through five and count seven with particularity.

## I. Factual Background

Plaintiffs' Complaint contains the following factual allegations, which are assumed to be true for the sole purpose of deciding the instant Motion under Rule 12(b)(6).

### 1. *The Parties*

Dr. Art Arnold, Larry Auerbach, Stephen Axelrod, Adrea Brier, Ralph Eckler, Richie Friedman, Margaret Heglund, Norman Charles Heglund, Kai Tak International Ltd., Ann Kueffner, Zvi Kurtzman, Cipora Lavut, Chana Kurtzman, Regina C. Lemmer, Macathel LP, Craig MacNab, Gregory McDaniel, Larry McNamara, Phyllis Poor, James Tiampo, and Wolfe Axelrod Weinberger Associates, LLC, (collectively "Plaintiffs") filed their Complaint on March 14, 2011, in the Fifteenth Judicial Circuit of Palm Beach County. (*See* DE 1—Attachment 1—Exhibit A).

Plaintiffs allege that Thomas A. McFall, David F. Hackett, Robert M. Brown (collectively, "the Officers"), Gary P. Arnold, Gary L. Fishman, and Richard R. Schreiber (collectively, "the Directors"), (collectively "Defendants"), each served at all relevant times as either a Director or Officer of Gulfstream International Group, Inc. ("Gulfstream"). (*Id.* at 2).

### 2. *Defendants Alleged Actions*

Purportedly, between 2008 and 2010, Defendants misrepresented material facts or omitted to state material facts in connection with the sale of Gulfstream's securities. Plaintiffs allege "[d]uring 2010 and prior to filing its petition for Bankruptcy, Gulfstream marketed and ... entered into a series of financing transactions" including but not limited to selling securities to customers of Jesup and Lamont Securities Corporation ("Jesup"). (*Id.* at ¶ 14).

Plaintiffs claim that Jesup chose to raise capital on behalf of Gulfstream based upon statements supposedly made by the Officers to employees of Jesup. (*Id.* at ¶ 16). "In or about late 2009", Plaintiffs purport that Defendant McFall had a conversation with a Jesup employee, in which he "acknowledged that for 2008 and early 2009, Gulfstream suffered losses due to the recession." (*Id.* ¶ 15). Purportedly, McFall also stated during this conversation, and "on numerous other occasions" that "Gulfstream had turned the corner to profitability." (*Id.*). Plaintiffs fail to provide the exact date, time, and place Defendant McFall made these alleged statements; additionally, Plaintiffs fail to allege the manner in which these statements misled the Plaintiffs. Rather, Plaintiffs purport that these conversations took place between a non-party and Defendant McFall.

Jesup's first round of financing ("First Round") for Gulfstream allegedly took place in January 2010 and involved the sale of shares of Gulfstream common stock and warrants. (*Id.* at ¶ 17). In June 2010, allegedly to raise more equity, Gulfstream sold Series A Convertible Preferred Shares ("Second Offering"). (*Id.* at ¶ 18). Plaintiffs allege in February 2010 and June 2010, the Officers prepared and provided Jesup with investor presentations, which were distributed during presentations at Jesup's branch offices in New York, Chicago, San Francisco, Boston, and Boca Raton. (*Id.* at 19). Additionally, Plaintiffs allege that the Officers themselves made presentations to prospective investors, both in person and over the phone; however, Plaintiffs fail to include the precise statements made by the Officers or provide any facts that identify the date, time, and place that the Officers made these presentations. (*Id.* at 19). Al-

legedly, Gulfstream filed its Form 10–Q in August 2010, which reflected Gulfstream's second quarter ending June 30, 2010. (*Id.* at 20). Plaintiffs allege that Gulfstream's Form 10–Q "substantially and broadly contradicts the representations made" during the presentations. (*Id.* at 20).

Specifically, Plaintiffs allege Defendants made the following material, and knowing, misrepresentations: (1) representations about Gulfstream's future profitability; (2) representations that Gulfstream had an exclusive license to operate between the United States and Cuba; (3) representations concerning the amount of a civil penalty imposed on Gulfstream by the Federal Aviation Administration ("FAA"); and (4) representations in an e-mail sent from Defendant McFall to Plaintiff MacNab, which allegedly deceived Plaintiffs about the source of Gulfstream's influx of capital ("E-mail"). However, except for the E-mail, Plaintiffs fail to set forth precisely what documents or oral representations were made to Plaintiffs by each Defendant. In fact, Plaintiffs repeatedly allege the presentations included misrepresentations or the Officers collectively made misrepresentations; however, Plaintiffs fail to allege which presentations included this information, who made the alleged statements, where the statements were made, the manner in which the Plaintiffs relied upon the alleged statements, and what Defendants obtained as a consequence of their alleged misstatements of material fact.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. Fed.R.Civ.P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, this Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) [hereinafter *Twombly* ]; *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) [hereinafter *Iqbal* ]. That is, the complaint "must ... contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997); *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Christopher v. Harbury,* 536 U.S. 403, 406, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1950; *see also Sinaltrainal v. Coca–Cola Co.,* 578 F.3d 1252, 1260 (11th Cir.2009) (stating that an unwarranted deduction of fact is not considered true for the purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim in his complaint. Fed.R.Civ.P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly,* 550 U.S. at 556 n. 3, 127 S.Ct. 1955. The plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 555, 127 S.Ct. 1955 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true."

## III. Discussion

### 1. *Count One*

■ In count one, Plaintiffs allege Defendants violated section 517.301(1)(a) ("Section 301") of the Florida Securities and Investor Protection Act ("FSIPA"). Section 301 states in pertinent part that it is unlawful for an individual "in connection with the offer, sale, or purchase of any investment or security" to do any of the following: (1) "employ any device, scheme, or artifice to defraud;" (2) "obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;" or (3) "engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person." (*See* DE 1—Attachment 1 at 11). *See* Fla. Stat. § 517.301(1)(a)(1)-(3). The elements of a cause of action under Section 301 are identical to those under Rule 10b–5 of the Exchange Act, "except that the scienter requirement under Florida law is satisfied by [a] showing of mere negligence," *Grippo v. Perazzo,* 357 F.3d 1218, 1223 (11th Cir.2004) (citing *Gochnauer v. A.G. Edwards & Sons, Inc.,* 810 F.2d 1042, 1046 (11th Cir.1987)), and a plaintiff does not need to prove loss causation under Florida law, *see E.F. Hutton & Co., Inc. v. Rousseff,* 537 So.2d 978, 981 (Fla.1989) ("Proof of loss causation is not mentioned in sections 517.211 or 517.301, nor is it required under section 12(2), which is the compara-

ble federal law, or under the common law cause of action from which the state and federal laws derived. Accordingly, we hold that proof of loss causation is not required in a civil securities proceeding under sections 517.211 and 517.301, Florida Statutes.").

■ Accordingly, in order to state a claim under Section 301, a plaintiff must allege the following: (1) that a defendant made a misstatement or omission (2) of a material fact (3) with scienter (4) upon which the plaintiff relied. *See Theoharous v. Fong,* 256 F.3d 1219, 1224 (11th Cir. 2001), *abrogated on other grounds by Merck & Co., Inc. v. Reynolds,* — U.S. ——, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010). Additionally, a plaintiff must also satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure in order to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 9(b). Federal Rule of Civil Procedure 9(b), provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).

■ To satisfy Rule 9(b)'s heightened pleading requirements, a plaintiff must set forth "(1) precisely what documents or oral representations were made, ... (2) the time and place of each such statement and [where possible] the person responsible for making (or, in the case of omissions, not making) same, ... (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *In re Recoton Corp. Sec. Litig.,* 358 F.Supp.2d 1130, 1138 (M.D.Fla.2005) (quoting *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001)). The "particularity" requirement "serves an important purpose in fraud actions by alert-

ing defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001) (citation omitted).

■ Defendants move to dismiss count one pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure. Defendants argue Plaintiffs failed to plead fraud with particularity against all Defendants. Except for the E-mail, which was purportedly only sent by Defendant McFall to Plaintiff MacNab, Plaintiffs fail to state with particularity the circumstances underlying their allegations that Defendants made misrepresentations or omissions of material fact. Accordingly, count one is dismissed against all the Directors and Defendants Hacket and Brown. Even though Plaintiff MacNab provided sufficient factual details regarding the E-mail he received from Defendant McFall, he still fails to state a claim upon which relief can be granted under count one.

Plaintiff MacNab alleges the E-mail contains the following statements, which were misleading: (1) that the $500,000 subsidy to Gulfstream came from the Bahamian government when in fact it came from Out Island Promotion Board ("OIPB") a non-profit organization in the Bahamas composed of hoteliers (*see* DE 1—Attachment 1 at 7–8) and (2) that the $1,000,000.00 loan "arranged from close associates" was misleading because it gave Plaintiff MacNab the impression that the loan was "an infusion of new money into" Gulfstream (*see* DE 1—Attachment 1 at 8).[1]

■ Plaintiff MacNab alleges that both of these representations are misstate-

ments of material fact. With respect to the first statement, the Parties dispute whether Defendant McFall's statement in the E-mail that the Bahamian government, rather than OIPB, would pay Gulfstream $500,000.00 is material. Whether this alleged misstatement is material is a question of fact; consequently, considering the facts in a light most favorable to Plaintiff MacNab, I find Plaintiff MacNab sufficiently alleged Defendant McFall made a misstatement of material fact with respect to the source of the $500,000.00 subsidy. Nevertheless, Plaintiff MacNab fails to allege *any* facts showing that Defendant McFall negligently made these statements to Plaintiff MacNab. With respect to the second statement, Plaintiff MacNab fails to allege any facts that support his allegation that this statement was misleading or a misrepresentation of material fact. Accordingly, in addition to the other Plaintiffs, Plaintiff McFall also fails to state a claim upon which relief can be granted in count one.

### 2. *Count Two*

In count two, Plaintiffs allege Defendants violated section 20(a) of the Securities and Exchange Act of 1934. (*See* DE 1—Attachment 1 at 13). Section 20(a) states in pertinent part that: "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C.

---

**1.** Plaintiff MacNab alleges that Defendant McFall's comment "[n]ow on to the big raise to buy out the fleet" is misleading; however, he fails to explain how this statement is misleading. (*See* DE 1—Attachment 1 at ¶ 32).

§ 78t(a). It is clearly established law that Section 20(a) is not a freestanding claim but is merely a means of imposing liability, "not only on the person who actually commits a securities law violation, but also on an entity or individual that controls the violator." *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 635 (11th Cir. 2010) (quoting *Laperriere v. Vesta Ins. Group, Inc.,* 526 F.3d 715, 721 (11th Cir. 2008)).

 "Because a primary violation of the securities law is an essential element of a § 20(a) derivative claim, a plaintiff who pleads a § 20(a) claim can withstand a motion to dismiss only if the primary violation is pleaded with legal sufficiency." *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 635 (11th Cir.2010) (*Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir.2006)). In order to state a claim for a primary violation under Rule 10b–5 of the Exchange Act, a plaintiff must allege the following: (1) that a defendant made a misstatement or omission (2) of a material fact (3) with scienter (4) upon which the plaintiff relied (5) that proximately caused the plaintiff's loss. *See Theoharous v. Fong,* 256 F.3d 1219, 1224 (11th Cir.2001), *abrogated on other grounds by Merck & Co., Inc. v. Reynolds,* — U.S. ——, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010).

 Plaintiffs fail to state a claim for relief under Rule 10b–5 of the Exchange Act because they fail to allege Defendants false or misleading statements "caused the loss for which [they] seek[ ] to recover." *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoting 15 U.S.C. § 78u–4(b)(4)). "A plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, neg-atively affected the value of the security." *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 173 (2d Cir.2005) (internal quotation marks and citation omitted). "Because market responses, such as stock downturns, are often the result of many different, complex, and often unknowable factors, the plaintiff need not show that the defendant's act was the sole and exclusive cause of the injury he has suffered; he need only show that it was substantial, i.e., a significant contributing cause." *Robbins v. Koger Props., Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997) (internal quotation marks omitted).

In their Response, Plaintiffs assert that they clearly alleged loss causation because it is "obvious ... that the written Presentations used by the Officers of the company at 'Road Show Presentations' to Jesup brokers and others would be relied upon for the purpose of raising money from investors." (*See* DE 19 at 8–9). Apparently, Plaintiffs confused the concept of reliance and loss causation, which are separate elements of a Rule 10b–5 claim. After carefully considering their Complaint, I find Plaintiffs fail to allege that Gulfstream's stock price declined after Defendants disclosed their alleged misrepresentations or omissions of material fact; also, Plaintiffs fail to allege a causal connection between the alleged false or misleading statement and the decline in Gulfstream's stock price. Accordingly, Plaintiffs fail to state a claim for primary liability under Rule 10b–5; therefore, they fail to state a claim upon which relief can be granted for secondary liability under § 20(a).

### 3. *Counts Three, Four, and Seven*

Counts three, four, and seven are all subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure; thus, I will consider these counts collectively. *See Pruco Life Ins.*

*Co. v. Brasner,* No. 10–80804–CIV, 2011 WL 2669651, at *4, (S.D.Fla. July 7, 2011) (holding that Rule 9(b)'s requirements govern a claim for common law negligent misrepresentation because the Eleventh Circuit has ruled "[h]istorically, in Florida an action for negligent misrepresentation sounds in fraud rather than negligence" (quoting *Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1511 (11th Cir.1993)); *see also Daniels v. Nat'l City Mortg.,* No. 2:08–cv–743–FtM–29SPC, 2009 WL 2590078, at *2 (M.D.Fla. Aug. 20, 2009) (holding that when the basis for rescission is fraud allegedly committed by defendants, a rescission claim must be plead with specificity in accord with Rule 9(b)).

 In count three, Plaintiffs assert a claim for common law negligent misrepresentation. Under Florida law, in order to allege a claim for common law negligent misrepresentation a plaintiff must state the following: 1) the defendant made a misrepresentation of material fact; 2) the defendant either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; 3) the defendant intended to induce another to act on the misrepresentation; and 4) an injury resulted to the plaintiff who acted in justifiable reliance upon the misrepresentation. *See Gilchrist Timber Co. v. ITT Rayonier, Inc.,* 127 F.3d 1390, 1393 (11th Cir.1997) (citing *Baggett v. Electricians Local 915 Credit Union,* 620 So.2d 784 (Fla. 2d DCA 1993)).

 In count five, to allege a claim for common law fraud under Florida law, a party must set forth the following: 1) the defendant made a false statement or omission of material fact; 2) the defendant knew the statement was false; 3) the statement was made for the purpose of inducing plaintiff to rely on it; 4) plaintiff's reliance was reasonable; and 5) plaintiff suffered damages. *See Mergens v. Drey-*

*foos,* 166 F.3d 1114 (11th Cir.1999); *see also Brough v. Imperial Sterling Ltd.,* 297 F.3d 1172 (11th Cir.2002).

 Except for Plaintiff MacNab, Plaintiffs fail to plead counts three and five with particularity as required by Rule 9(b). As addressed above, the only precise statements identified by Plaintiffs were statements contained in an E-mail sent from Defendant McFall to Plaintiff MacNab. Therefore, except for Plaintiff MacNab, Plaintiffs fail to state a claim upon which relief can be granted in counts three and five.

 As addressed previously, While Plaintiff MacNab alleged Defendant McFall made one misrepresentation about the source of the subsidy, he failed to allege *any* facts showing Defendant McFall knew the statements in the E-mail were false, made the misrepresentations without knowledge of their truth or falsity, or should have known the representations were false. Accordingly, Plaintiff McFall also fails to state a claim upon which relief can be granted in counts three and five of the Complaint because he fails to provide any facts that support his theory that Defendant McFall acted with the requisite mens rea to commit common law fraud or negligent misrepresentation.

Finally, in count seven, Plaintiffs claim that the Court in its equitable powers should rescind their purchase of Gulfstream's securities because Defendants fraudulently induced them to purchase Gulfstream's shares. Previously, I found that counts one, two, three, and five should be dismissed because Plaintiffs failed to plead their claims for fraud with particularity or state a claim upon which relief could be granted. Accordingly, for the reasons set forth above, I find count seven, which is a derivative claim based upon Defendants' alleged commission of securities fraud and common law fraud, also fails

to state a claim upon which relief can be granted.

### 4. *Count Four*

In count four, Plaintiffs allege Defendants breached their fiduciary duties of "due care, good faith, and ... loyalty" that Defendants, as Officers and Directors, owed Plaintiffs, as shareholders. (*See* DE 1—Attachment 1 at ¶ 63). Whether Defendants, as Officers and Directors of Gulfstream, owe Plaintiffs, as shareholders, a fiduciary duty is a question that requires the Court to consider the internal affairs of a corporation. *See Mukamal v. Bakes*, 378 Fed.Appx. 890, 896 (11th Cir.2010) (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 2642, 73 L.Ed.2d 269 (1982) (holding that "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders are a corporation's internal affairs")). Under the Florida Business Corporation Act, the internal affairs of a corporation are governed by the laws of the state of incorporation. *See* Fla. Stat. § 607.1505(3) (stating in pertinent part that "[t]his act does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state"); *see also* Rest.2d Conf. § 302(2) (1971) ("The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.").

■■■ Count four concerns the internal affairs of Gulfstream; accordingly, I must look to the substantive law of Delaware, Gulfstream's state of incorporation, to determine whether Plaintiffs state a claim upon which relief can be granted. *See* Fla. Stat. § 607.1505(3). Count four is based

upon the allegation that Plaintiffs were induced to buy Gulfstream stock based upon Defendants' alleged misrepresentations. (*See* DE 1—Attachment 1 at ¶ 63). This claim is premised upon the fiduciary duty of disclosure or candor, which under Delaware law "is somewhat nebulous" and is described as "merely a specific application of the duties of care and loyalty." *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 357 (Del.Ch.2008). However, directors and officers of a corporation only owe a duty of disclosure to individuals who are shareholders of the corporation. *See id.* at n. 20 (citing *Malpiede v. Townson*, 780 A.2d 1075, 1086 (Del.2001) ("We begin by observing that the board's fiduciary duty of disclosure, like the board's duties under *Revlon* and its progeny, is not an independent duty but the application in a specific context of the board's fiduciary duties of care, good faith, and loyalty."); *Skeen v. Jo–Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del.2000) ("Directors of Delaware corporations are fiduciaries who owe duties of due care, good faith and loyalty to the company and its stockholders. The duty of disclosure is a specific formulation of those general duties that applies when the corporation is seeking stockholder action."); *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 745 n. 400 (Del.Ch. 2005) ("The Delaware Supreme Court has been clear that outside the recognized fiduciary duties of care and loyalty (and perhaps good faith), there are not other fiduciary duties. In certain circumstances, however, specific applications of the duties of care and loyalty are called for, such as so-called '*Revlon*' duties and the duty of candor or disclosure.")).

■■■ In the instant Motion, Defendants argue that Plaintiffs fail to state a claim as a matter of law because they allege they purchased their stock based upon Defendants' alleged misrepresentations, which

Defendants argue "occurred *before* Plaintiffs acquired their Gulfstream stock and became Gulfstream shareholders." (*See* DE 13 at 24). In response, Plaintiffs claim that their "fiduciary duty claims are not predicated on misrepresentations prior to Plaintiffs' purchases of" the shares of Gulfstream; however, Plaintiffs fail to argue an alternative ground supporting count four. (*See* DE 19 at 9). Looking at the language of the Complaint itself, Plaintiffs' allege that "Defendants caused Plaintiffs to enter into the Jesup Raises at a time that they knew or should have known their representations were false" and "Defendants . . . violated the terms of the Jesup Raises." (*See* DE 1—Attachment 1 at ¶¶ 63–64). Considering Plaintiffs' factual allegations, I find that Plaintiffs fail to state a claim for breach of fiduciary duty as a matter of law because at the time Defendants made their alleged misrepresentations, Plaintiffs were not shareholders of Gulfstream.

### 5. *Count Six*

■ In count six, Plaintiffs allege Defendants are liable for breach of contract because Plaintiffs "each entered into respective agreements with Gulfstream", which "Defendants breached." (*See* DE 1—Attachment 1 at ¶ 73–74). Under Florida law, the elements of a claim of breach of contract are as follows: (1) a valid contract existed between the parties; (2) the defendant breached the contract, and (3) plaintiff suffered damages. *See Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir.1999) (citing *Abruzzo v. Haller,* 603 So.2d 1338, 1340 (Fla. 1st DCA 1992)). In their Response to Defendants' Motion to Dismiss, Plaintiffs concede that count six should be dismissed. (*See* DE 19 at 10).

### IV. Conclusion

Accordingly, it is hereby

**ORDERED and ADJUDGED** that

1. Defendants' Motion to Dismiss (DE 13) is **GRANTED**;

2. Counts One through Three, Count Five, and Count Seven of the Complaint are **DISMISSED WITHOUT PREJUDICE**;

3. Counts Four and Six of the Complaint are **DISMISSED WITH PREJUDICE**;

4. Plaintiffs' shall file an Amended Complaint within **10 (ten) days** from the date of this Order;

5. All pending motions are **DENIED AS MOOT**;

6. The Parties shall submit all Pretrial Motions by **January 12, 2012**;

7. The Parties shall submit their joint Pretrial Stipulation of Fact by **February 10, 2012**;

8. This case is continued until the trial period commencing **February 27, 2012,** at 9:00 a.m.; and

9. The Parties shall appear before this Court on **February 22, 2012,** at 1:15 p.m. for Status Conference and Calendar Call.